IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT F. KENNEDY HUMAN RIGHTS<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE FOR CIVIL RIGHTS AND CIVIL LIBERTIES;<br><br>*Defendants*. | Case No. 1:25-cv-6541 |

**COMPLAINT**

1. Plaintiff Robert F. Kennedy Human Rights (RFKHR), a not-for-profit organization that informs the public on the harms of immigration detention, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive, declaratory, and other appropriate relief regarding agency records related to the Case Management Pilot Program. From 2020 to March 2025, the Case Management Pilot Program was a federally funded initiative that guaranteed appearance of non-citizens at immigration court hearings—without the use of detention or surveillance, over 90% cheaper than detention, and with a successful court appearance rate of 100% in FY23. Plaintiff RFKHR seeks to inform the public of humane and effective community-based alternatives to privatized immigration detention, a system marked by wastefulness, public corruption, and abusive treatment of detained people.

2. Since the federal government mandated daily arrest quotas for Immigration and Customs Enforcement (ICE) agents in early 2025, news reports and online videos witnessed by

1

millions have recorded instances of masked federal agents kidnapping non-citizen students off the streets in retaliation for political speech, arresting U.S. citizens falsely accused of lacking immigration status, and shipping people to remote detention centers scattered across the country.[1]

3. Close to 90% of all people in immigration custody are held in private prisons managed by for-profit companies like the GEO Group and CoreCivic, whose executives include former ICE officials who left government employment following the awarding of private contracts for immigration detention.[2]

4. Inside immigration detention centers, tens of thousands of people suffer abusive treatment every day, including physical and sexual assault, torturous solitary confinement in filthy cells for months at a time, and fatal medical neglect.[3]

5. In FY 2024, the federal government allocated $3.4 billion for immigration detention. In July 2025, the President signed into law an additional $45 billion in federal funds to expand immigration detention, a 1,224% percent increase over the previous fiscal year.[4]

---

[1] *See* María Luisa Paúl, *As Trump cracks down on immigration, U.S. citizens are among those snared*, Wash. Post (Apr. 5, 2025), https://perma.cc/R5SX-QTS5 (describing recent reports of at least seven US citizens wrongfully detained or deported); Victoria Albert, *Inside Columbia Student Mahmoud Khalil's ICE Detention Center*, Wall Street Journal (Apr. 1, 2025), https://perma.cc/DRL9-DXKQ (detailing Columbia student protestor Mahmoud Khalil's retaliatory arrest and detention at a "black-hole destination"); Moira Donegan, *The US government is effectively kidnapping people for opposing genocide*, The Guardian (Mar. 28, 2025), https://perma.cc/YVP6-ANJ6 (examining Tufts student Rumeysa Ozturk's abduction by masked ICE agents and transfer to a facility in Louisiana 1,000 miles away).

[2] *See* Nick Schwellenbach and René Kladzyk, *Private Prison Giant Hired ICE Detention Chief*, Project on Gov't Oversight (Jan. 17, 2025), https://perma.cc/MVJ3-A29Z (explaining how former senior ICE official Daniel Bible's move to the GEO Group "join[s] a long tradition of ICE officials departing to work for the agency's top contractor."); José Olivares, *Biden extended contracts to private immigration jails despite reports of 'horrific' conditions*, The Guardian (Dec. 6, 2024), https://perma.cc/6BFQ-BVFC (noting that 90% of people in ICE custody are held in privately-run facilities).

[3] Miriam Jordan and Jazmine Ulloa, *Concerns Grow Over Dire Conditions in Immigrant Detention*, N.Y. Times (June 28, 2025), https://perma.cc/K2FW-7WRM; Am. Oversight, *Abusive Conditions and Private Industry Ties to Mass Immigration Detention* (May 8, 2025), https://perma.cc/H59T-S6QF; Robert F. Kennedy Human Rights et al., *Inside the Black Hole: Systemic Human Rights Abuses Against Immigrants Detained & Disappeared in Louisiana*, Robert F. Kennedy Human Rights (Aug. 26, 2024), https://perma.cc/MTM6-FSNS.

[4] One Big Beautiful Bill Act, H.R. 1, 119th Cong. (2025); Camilo Montoya-Galvez, *Trump's "big, beautiful bill" gives ICE unprecedented funds to ramp up mass deportation campaign*, CBS News (July 10, 2025), https://perma.cc/AY42-7X2M; Allison McCann et al., *Trump Administration Aims to Spend $45 Billion to Expand Immigrant Detention*, N.Y. Times (Apr. 7, 2025), https://perma.cc/S6VX-5NUA.

6. The record-setting increase came after the Geo Group and CoreCivic, two of the largest private prison companies in the United States, donated almost $3 million to the President's campaign and inauguration expenses.[5] It also followed the appointment of former Geo Group lobbyists and consultants to high-level federal government positions in charge of immigration policy, including Attorney General Pam Bondi and "Border Czar" Tom Homan.[6]

7. In February 2025, a Geo Group executive boasted of "unprecedented opportunity"[7] on a shareholder call. In July 2025, Geo Group raised compensation and bonuses for top executives.[8]

8. In the meantime, reports of inhumane conditions in ICE detention dominate headlines.[9] Most recently, in Florida's notorious "Alligator Alcatraz" detention center, lawmakers have described hundreds of people confined in cages in stifling heat, plagued by insect infestations, and forced to use the same water to flush toilets and brush their teeth.[10]

---

[5] Katherine Culliton-Gonzalez and Lama Elsharif, *Trump's budget bill benefits private immigration detention companies that donated to Trump*, Citizens for Responsibility and Ethics in Washington (July 23, 2025), https://perma.cc/8KGA-C4SS; Peter Charalambous and Laura Romero, *Private prison firms contributed more than $1M to Trump's reelection. Now they expect a business boom*, ABC News (Nov. 20, 2024), https://perma.cc/Y8XP-A5W7.

[6] *See* Ja'han Jones, *Tom Homan's financial ties to private prison locking up immigrants raise questions*, MSNBC (May 28, 2025), https://perma.cc/K33X-65PM (outlining Tom Homan's background as a former GEO Group consultant); Matt Sledge, *Pam Bondi, Trump's New AG Pick, Lobbied for Private Prisons and Amazon*, The Intercept (Nov. 22, 2024), https://perma.cc/T5TZ-UVWJ (highlighting Pam Bondi's previous work as a lobbyist for the GEO Group).

[7] Elizabeth Weill-Greenberg, *Private Prison Exec Calls Mass Deportation Plans 'Unprecedented Opportunity'*, The Appeal (Feb. 27, 2025), https://perma.cc/5JWC-CFRX.; GEO Group Inc., *Transcript of Conference Call discussing GEO's financial results for the quarter ended September 30, 2024,* SEC, 26 (Nov. 7, 2024), https://perma.cc/XY2M-G4G2.

[8] *Geo Group extends executive chairman contract, raises bonuses for top officers*, Investing.com (July 10, 2025), https://perma.cc/4HJK-2GEC.

[9] Eduardo Cuevas, *Immigrants forced to eat 'like a dog' in 'overcrowded and chaotic' detention* centers, USA Today (July 24, 2025), https://perma.cc/ZB4R-CCN7; Al Jazeera Staff, *'Less than human': Report details Trump immigration detention centre abuses*, Al Jazeera (July 21, 2025), https://perma.cc/ZXZ3-WHV7; Jasmine Garsd, *In recorded calls, reports of overcrowding and lack of food at ICE detention centers*, NPR (June 6, 2025), https://perma.cc/46AV-FPJD; Jordan and Ulloa, *supra* note 3 (reporting inhumane conditions at detention centers across the country).

[10] Alaa Elassar and Rafael Romo, *Florida lawmakers allowed into 'Alligator Alcatraz' say detainees packed into cages*, CNN (July 13, 2025), https://perma.cc/5XWJ-P6G9.

9. Humane and effective alternatives to detention exist. One example was the Case Management Pilot Program (CMPP). After its creation by Congress in 2020, and until its sudden termination in March 2025, CMPP funded nonprofits and local governments to provide non-citizens in removal proceedings with legal information, mental health services, screening for indicia of human trafficking, and updates and information on court scheduling, amongst other services that ensured non-citizens' appearance in immigration court.[11] The federal government funded the program through the Federal Emergency Management Agency (FEMA) and administered it through the Department of Homeland Security's Office for Civil Rights and Civil Liberties, mandated "to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department [of Homeland Security] programs and activities." 6 U.S.C. § 345(a)(3).

10. In FY 2023, 100% of CMPP participants attended their immigration hearings without detention or electronic surveillance.[12]

11. CMPP also demonstrated significant cost savings compared to detention. The average daily cost per person for immigration detention is $164.65, with a projected 5% annual increase due to inflation. In contrast, community-based case management costs just $14.05 per day—yielding a roughly 90% savings of more than $150 per person, per day.[13]

12. Shortly before the President signed a record-setting increase in detention funding in July 2025, the executive branch dismantled the cost-effective and humane alternative to detention of CMPP without public explanation.

---

[11] DHS, *DHS Case Management Pilot Program*, https://perma.cc/6LWX-K3MQ (last updated Feb. 24, 2025); Department of Homeland Security Appropriations Act, 2021, H.R.7669, 116th Cong. (2020), https://perma.cc/TQ8Z-JJDG.
[12] DHS CRCL, *Fiscal Year 2023 Annual Report to Congress* (Nov. 2024), https://perma.cc/9RBW-4QZQ.
[13] Am. Imm. Lawyers Assoc., *Featured Issue: Immigration Detention and Alternatives to Detention* (Mar. 14, 2025), https://perma.cc/J6Z5-G45X.

13.     In early February 2025, Kyle Schutt, a technology executive who had recently joined the Department of Government Efficiency, and Joseph Mazzara, the recently appointed Acting General Counsel of DHS, met with employees of the Office for Civil Rights and Civil Liberties (CRCL) to discuss CMPP. Schutt accused the program of money laundering and Mazzara suggested investigating it under the Racketeer Influenced and Corrupt Organizations Act.[14] CRCL staff were stunned by this reaction to a program mandated by Congress that had proven both more cost-effective and humane than detention.

14.     A month later, on March 20, 2025, Cameron Hamilton, Senior Official Performing the Duties of Administrator of FEMA, sent a memo to DHS Secretary Kristi Noem recommending that FEMA evaluate CMPP for termination.[15]

15.     DHS terminated CMPP around the same time that it attempted to shutter CRCL for being "an internal adversary" that "obstructed immigration enforcement by adding bureaucratic hurdles and undermining DHS's mission."[16] On March 21, 2025, DHS leadership placed on leave virtually every employee of CRCL, the office in charge of overseeing CMPP, and ordered them to cease all work before eventually terminating their positions two months later. In May 2025, the government publicly announced that CRCL would remain open after non-profit plaintiffs filed a federal lawsuit challenging the decision to abolish the statutorily mandated office as a violation of separation of powers and arbitrary and capricious under the Administrative Procedures Act. *See* Complaint, *Robert F. Kennedy Human Rights et al. v. U.S. Dep't of Homeland Sec. et al.*, No. 1:25-cv-01270 (D.D.C. Apr. 24, 2025); Decl. of Ronald J. Sartini, *Robert F. Kennedy Human*

---

[14] J. David McSwane & Hannah Allam, *"They Don't Care About Civil Rights": Trump's Shuttering of DHS Oversight Arm Freezes 600 Cases, Imperils Human Rights*, ProPublica (Apr. 8, 2025), https://perma.cc/TA65-2SHB.

[15] Memorandum from Cameron Hamilton, Senior Official Performing the Duties of Administrator of FEMA, to Kristi Noem, DHS Secretary (March 20, 2025), available at https://perma.cc/4E9B-F4HE.

[16] Zolan Kanno-Youngs et al., *Trump Shuts Down 3 Watchdog Agencies Overseeing Immigration Crackdown*, N.Y, Times (Mar. 21, 2025), https://perma.cc/F4SP-8Q2Y.

5

*Rights et al.*, No. 1:25-cv-01270, ECF No. 40-1, ¶ 3 (D.D.C. June 2, 2025) (The [CRCL] Office will continue to carry out all of its statutory functions.")

16. On March 31, 2025, Plaintiff submitted a FOIA request (the Request) to DHS and CRCL seeking records related to CMPP, also known as the Alternatives to Detention Grant Program. Exh. 1. The records sought CMPP program data and performance metrics, evaluations of the program, and any congressional reports related to program implementation and evaluation.

17. After the release of a news story detailing the meeting where a DOGE official and the DHS Acting General Counsel criticized CMPP as a money laundering scheme, Plaintiff amended its original FOIA request to seek additional records (the Amended Request) related to the termination of CMPP. Exh. 2.

18. Plaintiff submitted the requests to obtain information that will permit the public to evaluate the merits of humane, cost-effective, successful, and evidence-based alternatives to detention at a time when the federal government seeks to massively expand immigration detention.[17]

19. Plaintiff sought expedited processing of the Requests under 5 U.S.C. § 552(a)(6)(E) and applicable agency regulations. They emphasized the urgent need to inform the public about effective alternatives to expenditure of taxpayer dollars on costly detention centers that subject tens of thousands of people every day to inhumane conditions, resulting in mounting death tolls.[18]

---

[17] Jose Olivares, *Trump administration sets quota to arrest 3,000 people a day in anti-immigration agenda*, The Guardian (May 29, 2025), https://perma.cc/XNB7-B7ZD; Camilo Montoya-Galvez, *ICE releases some migrant detainees as its detention facilities reach 109% capacity*, CBS News (Feb. 28, 2025), https://perma.cc/3U79-P9JZ.
[18] *See* Garsd, *supra* note 9 (describing reports of overcrowding, illness, and hunger at immigration detention centers); Marina Dunbar, *Two more Ice deaths put US on track for one of deadliest years in immigration detention*, The Guardian (June 30, 2025), https://perma.cc/Y9WX-ZKXA (tracking rapidly growing death tolls in immigration detention); ACLU, Press Release, *Civil Rights Organizations Raise Alarm Over Conditions and Rights Violations at Immigrant Detention Facilities Run by Federal Agencies* (May 29, 2025), https://perma.cc/9E4M-XLBG (warning of inhumane conditions of confinement including lengthy lockdowns, delays in receiving medical care, and lack of language access).

20. On April 16, 2025, DHS acknowledged receipt of Plaintiff's April 15 amended request and conditionally granted the request for a fee waiver. Exh. 3. DHS did not respond to Plaintiff's request for expedited processing. CRCL did not acknowledge receipt or respond to the Request.

21. Despite the urgent public interest in the issues underlying the Requests, DHS has not provided Plaintiff with *any* responsive records, in violation of its FOIA obligations. 5 U.S.C. § 552(a)(3)(A).

22. Defendants' failure to answer plaintiff's request for expedited processing also violates FOIA's requirement that a request be expedited where a delay "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or where the request is "made by a person primarily engaged in disseminating information" and urgency exists to inform the public concerning actual or alleged government activity. *Id.* §§ 552(a)(6)(E)(v)(I)–(II).

23. While Defendants improperly delay production of records that would inform the public of the unnecessary wastefulness of detention, increased use of detention has led to the deaths of 12 people in just seven months and reports of overcrowding and inhumane conditions, physical and sexual abuse, and inadequate access to food, water, sleep, hygiene, legal counsel, and medical care.[19] Delay in providing the records sought thus poses an imminent threat to life and physical safety of detained people.

---

[19] *See* Press Release, Office of Congresswoman Pramila Jayapal, *Jayapal Statement on Death of Detained Person at Moshannon Detention Center* (Aug. 8, 2025), https://perma.cc/VN38-HR7F ("This is the 12th death in ICE detention in under 7 months since Trump became President.."); Sen. Jon Ossoff, *The Abuse of Pregnant Women and Children in U.S. Immigration Detention* (July 30, 2025), https://perma.cc/2W22-5U7L (finding 510 credible reports of human rights violations in immigration detention including physical and sexual abuse, mistreatment of pregnant women and children, unsanitary living conditions, and inadequate food and water) ; *"You Feel Like Your Life Is Over": Abusive Practices at Three Florida Immigration Detention Centers Since January 2025*, Hum. Rts. Watch (July 21, 2025), https://perma.cc/4PMZ-8FQ2 (detailing the dangerously substandard medical care, overcrowding, abusive treatment, and restrictions on access to legal and psychosocial support at three Florida detention centers);

24. The information sought in the Request concerning alternatives to detention is urgently needed because it will inform the public of the government's reasoning for eliminating a viable, cheaper, and more humane alternative to a $42 billion taxpayer payout to private prison executives for detention contracts, many of whom are former government employees who arranged and implemented these contracts. Defendants' refusal to comply with FOIA and provide the records covered by the Requests directly impedes the public's entitlement to information about the government's activities in suppressing successful alternatives to punitive and wasteful detention.

## JURISDICTION AND VENUE

25. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2) and the authority to issue declaratory judgments pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has personal jurisdiction over the parties.

26. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff RFKHR maintains its principal places of business in this district.

## PARTIES

27. Plaintiff RFKHR is a non-partisan, not-for-profit organization that promotes human rights through public education, information campaigns, and advocacy. It engages in strategic story telling by building narratives to bring about reform through public education, transparency, and litigation where necessary. A substantial focus of its public education work is devoted to the promotion of immigrants' rights and the harms of immigration detention. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the public through its website, media, and information campaigns are critical and substantial

---

Gisela Salomon and Kate Payne, *Detained immigrants at 'Alligator Alcatraz' say there are worms in food and wastewater on the floor*, Assoc. Press News (July 11, 2025), https://perma.cc/5ATZ-V72G (describing the inhumane conditions at "Alligator Alcatraz").

8

components of RFKHR's work. RFKHR regularly publishes in-depth analyses of current events affecting human rights and broadly disseminates information to expose and rectify injustice. RFKHR disseminates content through its website, https://rfkhumanrights.org/, and by publishing reports, issuing press releases, and making public statements that reach millions. Access to current information about immigration detention practices and successful alternatives to detention is critical to those functions.

28. Defendant Department of Homeland Security (DHS) is a department of the Executive Branch of the United States, headquartered in Washington, D.C., charged with overseeing, among other areas, immigration enforcement and detention and border security. It exercises supervisory control over CRCL and FEMA. DHS has possession, custody, and control of all the records Plaintiff seeks in this action.

29. Defendant CRCL was established as an office within DHS charged by statute with receiving and investigating complaints of civil rights and civil liberties abuses by DHS, conducting public outreach so that people are aware of their ability to file complaints, and annually submitting reports to Congress on the complaints it receives. The CMPP National Board, charged with awarding funding and managing the pilot program, is chaired by the Officer for Civil Rights and Civil Liberties. On March 21, 2025, DHS placed almost all of CRCL's employees on administrative leave, effectively shuttering this critical body. After a lawsuit filed in May 2025 by non-profit organizations challenging the decision to close this oversight body, DHS has publicly confirmed that CRCL will not be abolished and will continue to fulfill its statutory mandates. *See* Sartini Decl., *Robert F. Kennedy Human Rights et al.*, No. 1:25-cv-01270, ECF No. 40-1, ¶ 3 (The [CRCL] Office will continue to carry out all of its statutory functions.").

30. Defendants DHS and CRCL are both federal agencies within the meaning of FOIA, 5 U.S.C. § 552(f)(1).

## FOIA STATUTORY FRAMEWORK

31. FOIA requires federal agencies, upon request by a member of the public, to promptly release records within the possession of the agency, unless a statutory exception applies. 5 U.S.C. § 552(a)–(b).

32. Within 20 working days after receipt of a FOIA request, an agency must determine "whether to comply" with the request. 5 U.S.C. § 552(a)(6)(A)(i). The agency must "immediately notify" the requester of "such determination and the reasons therefor." 35 U.S.C. § 552(a)(6)(A)(i)(I).

33. If an agency cannot meet the 20-day statutory time limit for processing a request because of "unusual circumstances," the agency may unilaterally extend the deadline by 10 days. 5 U.S.C. § 552(a)(6)(B)(i) ("If an agency has determined that unusual circumstances apply," then a failure to comply with the statutory time limit "is excused for an additional 10 days."). "Unusual circumstances" exist if it is "reasonably necessary to the proper processing of the particular requests" "to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request." 5 U.S.C. § 552(a)(6)(B)(iii)(II).

34. If the agency fails to respond within the statutory time limit, the requester is deemed to have exhausted its administrative remedies and may immediately seek judicial recourse to compel the agency's response to the FOIA request. 5 U.S.C. § 552(a)(6)(C)(i); 5 U.S.C. § 552(a)(4)(B).

35. FOIA and applicable agency regulations also require expedited processing for any FOIA request where a delay "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or where the requester is "primarily engaged in disseminating information" and it is urgent "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. §§ 552(a)(6)(E)(i), (v); *see* 6 C.F.R. § 5.5(e)(l)(i)–(ii). An agency is statutorily required to respond to a request for expedited processing within 10 days of the date of the request. 5 U.S.C. § 552(a)(6)(E)(ii)(I); *see* 6 C.F.R. § 5.5(e)(4).

36. Finally, FOIA also provides that this Court may assess attorneys' fees and litigation costs against the United States if Plaintiff prevail in this action. *See* 5 U.S.C. § 552(a)(4)(E).

## RELEVANT FACTS

### Case Management Pilot Program (CMPP)

37. The DHS CMPP was established by Congress in FY 2021 (calendar year 2020) to provide voluntary, trauma-informed, and culturally competent case management and other services to non-citizens in removal proceedings. CMPP offered funding to nonprofits and local governments to provide case management support, legal information, mental health services, trafficking screening, connections to social services, cultural orientation programs, connections to social services, and departure planning and reintegration services for individuals returning to their home countries.[20]

38. CMPP was administered by the CMPP National Board, chaired by the DHS Officer for Civil Rights and Civil Liberties. The other National Board members are nonprofit organizations with experience serving immigrants, refugees, asylum seekers, and other non-citizens.[21]

---

[20] DHS, *DHS Case Management Pilot Program*, *supra* note 11.
[21] *Id.*

39. CMPP was an alternative to detention for people and families in immigration court proceedings designed to guarantee attendance at immigration court hearings. People enrolled in CMPP were not subject to ICE electronic surveillance. The CRCL FY23 Annual Report to Congress recorded that "[a]t the close of Fiscal Year 2023, 100 percent of CMPP participants who had a scheduled immigration court hearing had attended their scheduled hearing."[22]

40. CMPP providers note several positive outcomes and successes with the program. As one example, "[i]n early 2024, an IRC [International Rescue Committee] caseworker in New York City identified upon enrollment that a CMPP client unknowingly had a master calendar hearing [in immigration court] scheduled in just a couple days' time—and it was to be held at an immigration court almost 1,500 miles away in Houston. The IRC team provided prompt assistance and coordinated with BakerRipley (the Houston CMPP provider), ultimately supporting the client in preparing for the hearing and securing a last-minute bus that allowed him to make it to the Houston immigration court with minutes to spare."[23]

41. CMPP is also more cost-effective than detention. The average cost of detaining one adult immigrant is $164.65 a day, while the CMPP costs only $14.05 a day per participant: a savings of over 90%.[24]

42. Other evidence-based research demonstrates that community-based case management programs result in improved respect for people's rights and wellbeing, high compliance and engagement rates, and lower costs.[25]

**February 10th Meeting Between DOGE and DHS Staff and Closure of CRCL**

---

[22] DHS CRCL, *Fiscal Year 2023 Annual Report to Congress*, supra note 12.
[23] Am. Imm. Lawyers Assoc., *The Case Management Pilot Program: A Humane, Effective Alternative to Immigration Detention* (Sept. 9, 2024), https://perma.cc/9Y35-Q9N9.
[24] Am. Imm. Lawyers Assoc., *Featured Issue: Immigration Detention and Alternatives to Detention*, supra note 13.
[25] Int'l Detention Coalition, *Gaining Ground: Promising Practice to Reduce and End Immigration Detention* (May 2022), https://perma.cc/9U7C-Z5MY.

43. On February 10, 2025, over a dozen DHS officials met with DOGE staff to discuss CMPP. The program was described by DHS officials as a "win-win" as it provided funding to "local organizations that provide case workers to keep people in immigration proceedings showing up to court . . . without expensive detentions and ankle monitors."[26]

44. During the meeting, DOGE leader Kyle Schutt and DHS acting general counsel Joseph Mazzara questioned the legitimacy of the program. Schutt suggested it "sound[ed] like money laundering" and Mazzara proposed it be investigated under civil RICO laws, typically used to prosecute organized crime. DHS staff were shocked by this reaction to a program mandated by Congress.[27]

45. On March 20, 2025, Cameron Hamilton, Senior Official Performing the Duties of Administrator of FEMA, sent a memo to DHS Secretary Kristi Noem recommending that FEMA place conditions or restricts on all open and future awards for programs, including CMPP. The memo also classified grants that go to NGOs and "touch in any way on immigration" as high risk, requiring additional review by DHS and "evaluation for termination of grant program."[28]

46. On March 21, 2025, DHS abruptly closed CRCL (along with two other DHS oversight bodies—the U.S. Citizenship and Immigration Services Ombudsman Office and the Office of the Immigration Detention Ombudsman), placing nearly all employees, including the CRCL FOIA officer, on leave (with separation dates of May 23, 2025), and ordering them to cease all work. DHS has since publicly asserted that CRCL remains operational and is currently carrying out all statutory functions, though litigation over the matter continues. *See* Sartini Decl., *Robert F. Kennedy Human Rights et al.*, No. 1:25-cv-01270, ECF No. 40-1, ¶ 3 (The [CRCL] Office will

---

[26] McSwane & Allam, *supra* note 14.
[27] *Id.*
[28] Hamilton Memo, *supra* note 15.

continue to carry out all of its statutory functions."); DHS CRCL, "Office for Civil Rights and Civil Liberties," https://perma.cc/M2DP-UNRS (last visited June 18, 2025) ("The Office for Civil Rights and Civil Liberties continues to exist and will perform its statutorily required functions.").

### Plaintiff's FOIA Requests

47. On March 31, 2025, Plaintiff submitted a FOIA request to DHS and CRCL seeking any records related to CMPP since January 1, 2021. Specifically, the Request sought: 1) Any presentation, report, or other materials on the implementation and/or evaluation of CMPP provided by CRCL to members of Congress, Congressional committees, and/or their staff; 2) Any evaluation, review, study or other analysis of CMPP provided to CRCL, including by or on behalf of the Manhattan Strategy Group or any other external evaluator; 3) CMPP program data, including CMPP performance metrics disaggregated by program site and program phase; 4) Any and all relevant data on the same metrics (as detailed in No. 3 above) that CRCL collected for individuals who were eligible for but randomized out of CMPP enrollment during its trial phase. Plaintiff further provided a list of 14 data points to hone the agency's search. Exh. 1.

48. On April 15, 2025, Plaintiff amended their request to add: 5) Any and all records relating to or concerning the cancellation of the CMPP; 6) Any and all communications to and from DHS and CRCL personnel relating to or concerning allegations of human trafficking, money laundering, corruption, or any other illegal activity as it relates to the CMPP; 7) Any and all communications to and from DOGE employee Kyle Schutt and DHS Acting General Counsel Joseph Mazzara relating to or concerning the CMPP; 8) Any and all communications relating to or concerning the meeting between DHS and DOGE staff on February 10, 2025. Exh. 2.

49. Plaintiff filed the Requests to widely disseminate to the public, at no cost, critical information about humane, cost-effective alternatives to detention at time when immigration

detention rates and expenditures are soaring due to the federal government's mass detention and deportation efforts.

50. Plaintiff sought expedited processing for the Requests on two independent grounds.

51. First, Plaintiff demonstrated in the Requests that a lack of expedited disclosure of the records could "reasonably be expected to pose an imminent threat to the life or physical safety of an individual." Mounting death tolls and harms to health and safety in immigration detention caused by overcrowding and inhumane treatment currently pose threats to life and physical safety of detained people. Depriving the public of information concerning the availability of a humane and cost-effective alternative to detention that returned a 100% immigration court appearance rate could reasonably be expected to prolong threats to life and safety posed by immigration detention. 5 U.S.C. § 552(a)(6)(E)(v)(I); *see also* 6 C.F.R. § 5.5(e)(l)(i).

52. Second, Plaintiff demonstrated that they are primarily engaged in disseminating information and there exists a clear "urgency to inform the public concerning actual or alleged Federal Government activity." Amid ongoing public debates over efforts by the federal government to significantly expand the size and scope of immigration detention, the public has an urgent need for information that could affect the decision of how and whether to spend $42 billion in taxpayer funds appropriated for detention. 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(l)(ii).

53. On April 16, 2025, DHS acknowledged receipt of Plaintiff's April 15th Amended Request and conditionally granted the request for a fee waiver. Exh. 3. DHS did not respond to Plaintiff's request for expedited processing. CRCL did not acknowledge receipt or respond to either of Plaintiff's Requests.

**Defendants' Failure to Respond to Plaintiff's FOIA Requests**

54.     Even without expedited processing (and even assuming Defendants had invoked the 10-day extension, which they did not), Defendants' responses to the Amended Request were due by May 15, 2025, 30 business days (the default 20-day statutory time limit plus the 10-day extension referenced by DHS in its April 16, 2025 e-mail) after receiving the Request. 5 U.S.C. §§ 552(a)(6)(A), (a)(6)(B), (a)(4)(A)(viii)(II)(aa). None of the Defendants has provided any update to Plaintiff on the status of their Requests.

**Exhaustion of Administrative Remedies**

55.     Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), because Defendants failed to respond to Plaintiff's Request by the statutory deadline under 5 U.S.C. § 552(a)(6)(A)(i), Plaintiff is deemed to have exhausted their administrative remedies and may seek judicial recourse pursuant to 5 U.S.C. § 552(a)(4)(B).

**CAUSES OF ACTION**

**Count I**

**Violation of FOIA, 5 U.S.C. § 552(a)(3)(A), for Failure to Make Timely Available the Records Sought by Plaintiff's Requests**

56.     Plaintiff hereby incorporates by reference all facts and allegations above as if fully set forth herein.

57.     Plaintiff properly requested records within the possession, control, and custody of Defendants.

58.     Defendants' failure to timely make available the records sought by Plaintiff's Request violates FOIA. 5 U.S.C. § 552(a)(3)(A).

## Count II

**Violation of FOIA, 5 U.S.C. § 552(a)(6)(E), for Failure to Consider Plaintiff's Request for Expedited Processing**

59. Plaintiff hereby incorporate by reference all facts and allegations above as if fully set forth herein.

60. Defendants were statutorily required to expedite processing of Plaintiff's Request because Plaintiff demonstrated that: (i) "a failure to obtain [the] requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual"; and (ii) Plaintiff is "primarily engaged in disseminating information" and as a matter of urgency need "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. §§ 552(a)(6)(E)(i)(I), 552(a)(6)(E)(v)(I)–(II). People held in immigration detention centers are experiencing physical and sexual abuse and other torturous conditions while cheaper, more humane alternatives to detention that are just as effective in ensuring court appearance are quietly dismantled. Additionally, plaintiff RFKHR is primarily engaged in disseminating information and there is enormous public interest in the federal government's current expansion of immigration detention practices notwithstanding the existence of humane, effective, evidence-based alternatives to detention.

61. Defendants' failure to grant Plaintiff's request for expedited processing therefore violates FOIA. 5 U.S.C. § 552(a)(6)(E).

## Count III

**Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i), for Failure to Timely Respond to Plaintiff's Requests with Required "Determinations"**

62. Plaintiff hereby incorporates by reference all facts and allegations above as if fully set forth herein.

63. Plaintiff properly requested records within the possession, control, and custody of Defendants. 5 U.S.C. § 552(a)(1)(A); 6 C.F.R. § 5.3.

64. Defendants' failure to timely respond to Plaintiff's Requests with required determinations violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DHS's corresponding regulations promulgated thereunder, 6 C.F.R. § 5.6(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

a) Declare that Defendants have violated FOIA by failing to provide Plaintiff with all non-exempt records responsive to Plaintiff's Requests;

b) Declare that Defendants have violated FOIA by failing to timely respond to Plaintiff's Request with the required determinations regarding the Requests;

c) Declare that Plaintiff is entitled to disclosure of the requested records;

d) Direct by injunction that Defendants perform adequate searches for records responsive to Plaintiff's Request and provide Plaintiff with all records responsive to Plaintiff's Request that are not specifically exempted from disclosure under FOIA no later than 20 days after this Court issues an order granting Plaintiff relief;

e) Enjoin Defendants from charging Plaintiff fees for the search, review, duplication and processing of Plaintiff's Requests;

f) Retain jurisdiction over this action to ensure that no agency records are wrongfully withheld, including, if necessary, judicial review of any claim by Defendants that requested information is exempt from disclosure;

g) Award Plaintiff the costs of litigation, including any reasonable attorneys' fees incurred in this action, as provided by 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C.§ 2412(d)(1)(A); and

b) Grant any other relief that the Court deems just and proper.

Dated: August 8, 2025  
New York, NY

Respectfully submitted,

/s/ Anthony Enriquez  
Anthony Enriquez (Bar No. 5211404)  
ROBERT F. KENNEDY HUMAN RIGHTS  
88 Pine Street, 8th Floor, Suite 801  
New York, New York 10005  
Tel.: (646) 289-5593  
E: enriquez@rfkhumanrights.org

Sarah E. Decker (Bar No. 5850763)  
ROBERT F. KENNEDY HUMAN RIGHTS  
1300 19th Street NW, Suite 750  
Washington, DC 20036  
Tel.: (646) 289-5593  
E: decker@rfkhumanrights.org

Sarah T. Gillman (Bar No. #SG 9273)  
ROBERT F. KENNEDY HUMAN RIGHTS  
88 Pine Street, 8th Floor, Suite 801  
New York, New York 10005  
Tel.: (646) 289-5593  
E: gillman@rfkhumanrights.org

*Counsel for Plaintiff*