UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
ROBERT F. KENNEDY HUMAN RIGHTS,                                     :
                                                                    :
                            Plaintiff,                              :
                                                                    :               25-CV-6541 (JMF)
              -v-                                                    :
                                                                    :          MEMORANDUM OPINION
UNITED STATES DEPARTMENT OF HOMELAND              :                   AND ORDER
SECURITY, et al.,                                                   :
                                                                    :
                            Defendants.                             :
                                                                    :
--------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

"The basic purpose of" the Freedom of Information Act, also known as FOIA, "is to
ensure an informed citizenry, vital to the functioning of a democratic society, needed to check
against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins
Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  To that end, "virtually every document generated
by [a government] agency is available to the public in one form or another, unless it falls within
one of FOIA's nine exemptions." *ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 588 (2d Cir. 2019)
(cleaned up).  Once an agency receives a request for records, it must typically "determine within
20 days . . . after the receipt of any such request whether to comply."  5 U.S.C. § 552(a)(6)(A)(i).
If an agency denies the request for production or fails to respond to it in a timely fashion, the
requester may file suit in federal district court, which "has jurisdiction to enjoin the agency from
withholding agency records and to order the production of any agency records improperly
withheld from the complainant." *Id.* § 552(a)(4)(B).

On March 31, 2025, Plaintiff Robert F. Kennedy Human Rights ("RFKHR"), a nonprofit
organization, filed a FOIA request seeking records from the United States Department of

Homeland Security ("DHS" or the "Government") regarding DHS's Case Management Pilot Program, a federally funded initiative that sought to ensure that undocumented persons appeared at immigration court hearings without using detention or surveillance. *See* ECF No. 1 ("Compl."), ¶¶ 1, 16. RFKHR seeks the records "to inform the public of humane and effective community-based alternatives to privatized immigration detention." *Id.* ¶ 1. On April 16, 2025, DHS acknowledged receipt of the request but failed to take any further action for nearly four months. *See id.* ¶ 20. Accordingly, on August 8, 2025, RFKHR filed suit in this Court seeking an order compelling production. *See generally* Compl. In response, DHS identified nearly 4,500 pages of potentially responsive records. *See* ECF No. 24, at 1. And on November 25, 2025, it agreed to process 700 pages every month and to produce responsive documents to RFKHR. *See id.* One day later, the Court so ordered that production schedule and directed the parties to file a joint status letter on the progress of processing and production on January 7, 2026, and every two months thereafter. *See* ECF No. 25 ("November 26, 2025 Order").

On February 14, 2026, funding for much of DHS lapsed after Congress failed to reach agreement on an appropriations bill. *See* Max Matza, *Partial Government Shutdown Becomes the Longest in US History*, BBC (Mar. 29, 2026), https://perma.cc/UA5K-ULJN. The Government did not seek any relief, let alone a stay of the Court's November 26, 2025 Order requiring monthly processing and production of documents. On March 9, 2026, the Court, on its own initiative, endorsed the Government's January 6, 2026 status letter as follows: "In light of the current lapse in funding for the Department of Homeland Security, the parties are ORDERED to file a joint letter updating the Court on the status of production within 7 days following the restoration of funding to the Department of Homeland Security." ECF No. 27.

The Court did *not*, however, modify or stay that portion of its November 26, 2025 Order that required the monthly processing and production of documents.[1]

Two days later, RFKHR filed a letter-motion seeking to compel the Government to process and produce records in accordance with the Court's November 26, 2025 Order. *See* ECF No. 28 ("RFKHR Motion"). RFKHR's letter revealed that, on or about February 24, 2026, the Government had unilaterally "declar[ed] a stay" of its processing and production in light of the partial government shutdown and that the Government had interpreted the Court's March 9, 2026 endorsement as effectively blessing that decision. *Id.* at 1-2. At the Court's direction, the Government filed a response and later supplemented that response. *See* ECF No. 30 ("Gov't Opp'n"); ECF No. 31 ("Gov't Supp. Opp'n"). RFKHR filed a reply. *See* ECF No. 32 ("RFKHR Reply"). The Court directed the parties to appear for a conference to resolve the motion, *see* ECF No. 33, and, after hearing oral argument, ordered the Government to resume processing and production of documents, *see* ECF No. 35. The Court indicated that it might issue an opinion elaborating on its reasoning for that order. This is that opinion.

The Government's principal argument in opposition to RFKHR's motion to compel is that the Court lacks jurisdiction due to the political question doctrine. *See* Gov't Opp'n 2. That argument is risible, if not sanctionable. The political question doctrine deprives a court of authority to decide an issue only "where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it." *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S.

---

[1] During the broader government shutdown in the fall of 2025, the Chief Judge of this District issued a Standing Order that stayed most civil cases involving the Government (including this one) and tolled "all court deadlines . . . for the duration of the government shutdown." *See* ECF No. 21. The Chief Judge has entered no such standing order this time.

189, 195 (2012) (cleaned up).  But here, the only issue actually presented is whether the Government should be required to comply with a Court Order that it never moved to modify or stay.  Taking a broader view, the issues presented are (1) whether RFKHR has right to the documents it seeks under FOIA; and (2) whether the Court should modify or stay its November 26, 2025 Order mandating the monthly processing and production of documents.  All of these are firmly entrusted to the judicial branch for resolution and are governed by well-established standards.  *See* 5 U.S.C. § 552(a)(4)(B) (granting district courts jurisdiction "to order the production of any agency records improperly withheld from the complainant."); FED. R. CIV. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time"); FED. R. CIV. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The [d]istrict [c]ourt has broad discretion to stay proceedings as an incident to its power to control its own docket.").  The political questions doctrine is therefore plainly and flatly inapplicable.

The Government's contention that the political question doctrine applies appears to be premised on the notion that the issue presented here is whether those tasked with complying with the Court's November 26, 2025 Order should be paid.  *See* Gov't Opp'n 2.  To be sure, appropriations — that is, whether and how money should be disbursed from the treasury — are entrusted to the political branches generally, and to Congress in particular.  *See* U.S. CONST. Art. I, § 9, cl. 7 ("No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law.").  But it is not the Court's concern — nor does the Court purport to direct — whether, when, or how much agency employees are paid to perform work required to comply with FOIA and the Court's Order.  RFKHR merely seeks to enforce its rights under FOIA and to

4

adhere to the deadlines set forth in the Court's Order.  As the Government effectively conceded at oral argument, *see* Tr. 5-7, those are matters entrusted to the Court.

In the alternative, the Government appears to suggest that leaving the Court's November 26, 2025 Order in place would violate the Anti-Deficiency Act, 31 U.S.C. § 1341 *et seq.*  *See* Gov't Opp'n 2.  But that suggestion is belied by the Government's *own* interpretation of the Anti-Deficiency Act.  As relevant here, the Anti-Deficiency Act generally prohibits government employees during a government shutdown from "accept[ing] voluntary services . . . exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property."  31 U.S.C. § 1342.  But as the Government conceded at oral argument, *see* Tr. 8-10, the Department of Justice ("DOJ") has determined that, absent a court-ordered stay, agencies must carry out the work required to comply with court orders during a shutdown, as those orders "constitute express legal authorization for the activity to continue."  U.S. DEP'T OF JUSTICE, FY 2026 CONTINGENCY PLAN 3 (2025) ("FY 2026 CONTINGENCY PLAN"), https://perma. cc/DE7R-NPYN.  In other words, in the Government's own view, the work required to comply with the Court's November 26, 2025 Order is "excepted activity" permitted under the Anti-Deficiency Act.  *Id.* at 7-8; *see* Tr. 8 (Counsel for the Government stating: "To the extent your Honor orders that DHS continue to make FOIA productions . . . we will interpret that as an excepted activity that is allowed to proceed notwithstanding the shutdown . . . .").[2]  Having made that determination, the Government cannot then argue that the Act mandates a stay.

In short, the Government's arguments are too little.  They also came too late.  If the Government believed that the lapse in DHS funding warranted a modification or stay of the

---

[2]     Needless to say, that view is yet another reason the Government's invocation of the political question doctrine is preposterous.  The Executive Branch has already answered any conceivable political question implicated here.

Court's November 25, 2026 Order, it was obligated to seek relief in a timely fashion and, at a minimum, show "good cause." FED. R. CIV. P. 6(b); *accord* FED. R. CIV. P. 16(b)(4). As a matter of fact, DOJ's own guidance provides that, in the event of a lapse in funding, "[civil l]itigators *will* approach the courts and request that active cases, except for those in which a delay would compromise to a significant degree the safety of human life or the protection of property, be postponed until funding is available." FY 2026 CONTINGENCY PLAN 3 (emphasis added). But that did not happen here. The Government did not seek any relief from the Court until it opposed RFKHR's letter-motion to compel compliance with the November 26, 2025 Order. In the interim, the Government had violated that Order by failing to process and produce documents by the deadline of February 27, 2026 set by the November 26, 2025 Order.

When pressed at oral argument, the Government conceded that it could not meet the formal requirements for a stay of the Court's November 26, 2025 Order; indeed, it did not even ask for one. *See* Tr. 3, 12-13. Instead, the Government invited the Court, post hoc, to modify its Order as an exercise of its broad discretion over case management. *See id.* at 12. Having flouted the Court's November 26, 2025 Order and failed to exercise the minimum diligence that is due from a party to litigation (let alone from a repeat player like the federal government), however, the Government is not entitled to that relief. *Cf. Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (observing that, in assessing whether there is "good cause" to modify a scheduling order, "the primary consideration is whether the moving party can demonstrate diligence"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) ("A finding of good cause depends on the diligence of the moving party."). Nor, in the Court's view, should RFKHR's undisputed right to relief under FOIA, a statute passed by Congress and signed by the President, be held further hostage to the political branches' budgetary stalemate.

6

In concluding that the partial government shutdown does not warrant relief from a preexisting Court-ordered schedule for the processing and production of documents pursuant to FOIA, this Court joins others that have denied the Government similar relief in recent weeks. *See, e.g.*, *Women's Refugee Comm'n v. U.S. Dep't of Homeland Sec.*, No. 25-CV-7982 (LGS), ECF No. 28 (S.D.N.Y. Mar. 16, 2026); *Robert F. Kennedy Hum. Rts. v. U.S. Dep't of Homeland Sec.*, No. 25-CV-4349 (AS), ECF No. 78 (S.D.N.Y. Mar. 25, 2026); *Democracy Forward Found. v. U.S. Dep't of Homeland Sec.*, No. 25-CV-4089 (AHA) (D.D.C. Mar. 5, 2026); *Univ. of Wash. v. U.S. Dep't of Homeland Sec.*, No. 24-CV-1872 (LK), ECF No. 39 (W.D. Wash. Mar. 30, 2026). To the extent these decisions predated oral argument in this case, the Government downplayed them on the ground that the courts involved "did not appear to consider, much less reject, the constitutional and justiciability issues raised in the Government's filing in this case." Gov't Supp. Opp'n 1. But, as discussed above, "the constitutional and justiciability issues raised in the Government's filing in this case" are insubstantial, if not frivolous. *Id.* Little wonder, then, that, when pressed, the Government could not cite a single court that had considered, much less accepted, the constitutional and justiciability issues it has raised. *See* Tr. 11.

Deadlines matter. Court orders matter. The Government should not have taken it upon itself to decide that the Court's November 26, 2025 Order did not need to be obeyed. Nor should the Government have construed the Court's March 9, 2026 endorsement — which modified the deadline for the parties' joint status letter, but said nothing about the Court-ordered schedule for processing and producing documents to RFKHR — as blessing that unilateral decision. And when properly called on these transgressions by RFKHR, the Government should not have casually invoked a doctrine for the proposition that the Court has no say in the matter. For these

reasons, the Court's November 26, 2025 Order remains in effect, except as modified (to address

the Government's delays) in the Court's Order of March 24, 2026.  *See* ECF No. 35.


       SO ORDERED.

Dated: April 7, 2026
       New York, New York

                                          JESSE M. FURMAN
                                United States District Judge